IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AL GILANI, | § | |
|         **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-01461-X** |
| | § | |
| **UNIVERSITY OF TEXAS** | § | |
| **SOUTHWESTERN MEDICAL** | § | |
| **CENTER, ANGELA MIHALIC,** | § | |
| **MD, BLAKE BARKER, MD,** | § | |
| **W.P. ANDREW LEE, MD, AND** | § | |
| **DWAIN THIELE, MD,** | § | |
|         **Defendants.** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Al Gilani, Plaintiff herein, filing Plaintiff's First Amended Complaint and would show the Court the Defendant(s) wrongfully expelled him without due process in violation of the US Constitution and 42 U.S.C. § 1983, and showed bias toward him on the basis of race in violation of Title VI of the Civil Rights Act of 1964 (as amended, "Title VI").

### I. PARTIES AND SERVICE

1.  Plaintiff Al Gilani ("Mr. Gilani") brings this action individually.  Plaintiff resides in Dallas County, Texas. Plaintiff can be found for service of process by and through his attorneys of record, Guest & Gray P.C., 112 S. Bois D'Arc, Forney, Tx. 75126.

2.  Defendant University of Texas Southwestern Medical Center ("UTSW"), a university in Texas, is organized under the laws of the State of Texas.  UTSW accepted service prior to the removal of this action.

3. Defendant Angela Mihalic, MD is an individual, sued in her official and personal capacities, as explained, below. Dr. Mihalic serves UTSW as its Dean of Medical Students & Associate Dean of Student Affairs. Dr. Mihalic accepted service prior to the removal of this action.

4. Defendant Blake Barker, MD is an individual, sued in his official and personal capacities, as explained, below. Dr. Barker accepted service prior to the removal of this action.

5. Defendant W.P. Andrew Lee, MD is an individual, sued in his official and personal capacities, as explained, below. Dr. Lee accepted service prior to the removal of this action.

6. Defendant Dwain Thiele, MD is an individual, sued in his official and personal capacities, as explained, below. Dr. Lee accepted service prior to the removal of this action.

## III. JURISDICTION AND VENUE

7. Plaintiff seeks monetary and non-monetary relief.

8. UTSW is not immune under the United States Constitution to the Plaintiff's Title VI claims, as Defendant UTSW has waived any governmental immunity to suit or liability under Title VI by receiving federal financial assistance in the operation and improvement of the medical school district and its facilities. 42 USCA § 2000d-7. UTSW further waived its immunity from liability while this action remained in state court, by failing to file a plea to the jurisdiction asserting that defense before filing its general denial. UTSW further waived its immunity to suit by removing this action to federal court.

9. The individual defendants, in their personal capacities, are not immune from the Plaintiff's § 1983 claim.

10. The individual defendants, in their official capacities, are not immune from the Plaintiff's request(s) for injunctive relief.

11. Pursuant to 28 U.S.C. § 1331, jurisdiction of this Court is appropriate in the United States District Court for the Northern District of Texas, as this action involves a question of the application of federal law, namely violation of Plaintiff's Constitutional rights, Title VI, and 42 U.S.C. § 1983.

12. The subject matter in controversy is within the jurisdictional limits of this court.

13. This Court has jurisdiction over this lawsuit and is jurisdictionally competent to render judgment in this matter.

14. Venue for all causes of action stated herein lies in the Northern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. § 1391.

## IV.  FACTS

15.  Mr. Gilani is African-American.

16. Mr. Gilani entered UTSW as a first-year medical student in Fall 2016; however, he had a personal family matter ongoing and had some difficulty with his first-year courses.  He was given an extended leave of absence after which he would be able to return and remediate those first-year courses.  When he returned, he was placed on academic probation and completed his first-year courses without any issue.

17. Before his second-year of medical school, Mr. Gilani submitted an application of his intention to complete his summer research elective in Bwindi, Uganda during Summer 2018.  UTSW approved Mr. Gilani's Global Health Summer Research Elective for summer 2018 under the Submitted Topics/Protocols: "Quantitative and Qualitative Analysis of Trends, Causes, Risk Factors, and Variables of Mortality Among Children under 5 years old in Bwindi, Uganda" and

the project "HIV/AIDS Project in Uganda." The latter was suggested by Bwindi Community Hospital given the need for research in this field and was approved by UTSW, which confirmed that no further research approvals were needed. From UTSW's perspective, Mr. Gilani's faculty supervisor for his time in Uganda was Abier Abdelnaby, MD.

18. Mr. Gilani subsequently completed that summer work at a Community Hospital in Bwindi, Uganda, along with a fellow UTSW-student, Umaru Barrie. Like Mr. Gilani, Mr. Barrie is African American.

19. Mr. Gilani remained in contact with Dr. Abdelnaby throughout his summer in Uganda. Dr. Abdelnaby (and others at UTSW) knew of all his travels in real time. Dr. Abdelnaby expressed no reservations about those travels or with the quality of Mr. Gilani's work in Uganda, either at that time or since.

20. The quality of Mr. Gilani's work was also attested to by his peers in Uganda such that both: (a) the Executive Director; and (b) the Founder of Bwindi Community Hospital have expressed in writing their appreciation for the work he performed there. More, that work led to Mr. Gilani's preparation – along with fellow UTSW student in Uganda at the time Umaru Barrie – of a study, deemed worthy of publishing by at least one medical journal, before a subsequent intervention by UTSW officials halted publication. But for this intervention, Mr. Gilani and now-Dr. Barrie would have been the first UTSW students to turn travels through UTSW's Office of Global Health history into a published work.

21. Nonetheless, Mr. Gilani received a failing grade ("F") after someone within UTSW found his study to be deficient under UTSW's standards for abroad research assignments. On information and belief, that someone was Dr. Mihalic.

Cause No. No. 3:21-cv-01461-X
Al Gilani v. University of Texas Southwestern Medical Center
*Plaintiff's First Amended Complaint*

Page 4/26

22. This grade was justified through accusations that Mr. Gilani made misrepresentations regarding his research timeline and travel during his time in Uganda which UTSW funded. UTSW claimed that Mr. Gilani did not notify UTSW of his travel, despite Mr. Gilani having so notified UTSW, as well as having received approval for such travel from UTSW after following the required process. The allegations dramatically misstated nearly all the details of Mr. Gilani's stay in Uganda, from its documented duration, to the opinions of his supervisors in Uganda, to the involvement of his supervisors at UTSW.

23. On October 10, 2018, the Student Promotions Committee ("SPC") sent Mr. Gilani a letter, informing him that it had nominally held a meeting concerning these allegations on October 10, 2018, of which Mr. Gilani was given no prior notice and which he had not been allowed to attend. On information and belief, no such meeting was actually held, Dr. Mihalic authored the letter, and of the Committee's membership, only Dr. Mihalic and the SPC's chairman even knew that the letter had been composed and sent. According to the letter, as a result of this meeting, the SPC had placed Mr. Gilani on Academic Warning.

24. At about this time, Mr. Gilani completed his Gastrointestinal System course ("GI Block"), receiving a 63.75% grade. As the class average was below the expected score, the GI Block course directors adjusted the exam grades for 3 questions and gave an additional 2 points on the final course grade to all members of the class, except Mr. Gilani. The final exam pass cut-off for the GI Block was 64.50%. Had Mr. Gilani been given the same adjustment to his final exam grade which was applied to all of his peers, his grade would have been a passing 65.75%.

25. Arlene Sachs, Ph.D. (Director of Student Academic Services) confirmed the curve to Mr. Gilani. Dr. Mihalic forbid Mr. Gilani from ever mentioning the abuse of the curve and informed him

he would receive a professionalism disciplinary form if he disregarded her order.

26. Nonetheless, on December 5, 2018, the SPC again sent Mr. Gilani a letter. This letter, too, informed Mr. Gilani that the SPC had nominally held a meeting to consider his future, without prior notice or an opportunity to attend. On information and belief, no such meeting was actually held, Dr. Mihalic authored the letter, and of the Committee's membership, only Dr. Mihalic and the SPC's chairman even knew that the letter had been composed and sent. The SPC's December 5th letter informed Mr. Gilani that it had decided to dismiss him from the medical school based on his academic performance, specifically, in the GI Block. Mr. Gilani appealed this decision.

27. On December 18, 2018, the SPC again sent Mr. Gilani a letter, informing him that it had nominally held another meeting on his future on December 17, 2018. On information and belief, no such meeting was actually held, Dr. Mihalic authored the letter, and of the Committee's membership, only Dr. Mihalic and the SPC's chairman even knew that the letter had been composed and sent. The letter informed Mr. Gilani that the SPC had considered Mr. Gilani's appeal of the SPC's dismissal of Mr. Gilani and had reversed his expulsion on appeal, on the condition that he "remediate" his performance in the GI Block. The letter also informed Mr. Gilani that the SPC was continuing to impose an unwarranted academic probation on Mr. Gilani, during which "[a]ny further academic or professionalism deficiencies will result in immediate referral to the [SPC], with possible additional actions, up to and including dismissal."

28. As required, despite having previously achieved what should have been a passing grade, Mr. Gilani undertook the required "remediation" of a re-examination for the GI Block. After submitting the exam, in variance from UTSW's usual course of conduct, he was given no

Cause No. No. 3:21-cv-01461-X
Al Gilani v. University of Texas Southwestern Medical Center
*Plaintiff's First Amended Complaint*

Page 6/26

preliminary score and denied the chance to review the scoring of his remedial exam, each in contravention of standard practices for UTSW's examinations.  He was later informed that his remedial exam had been hand-graded and that he had failed it.  Upon request to see deficiencies in his examination, he was denied, despite this violating UTSW's grading policy and FERPA. On information and belief, the decision to require the exam to be hand-scored and to deny Mr. Gilani the opportunity to review that hand-scoring for accuracy was made by Dr. Mihalic.

29. As these events unfolded, and without so informing Mr. Gilani, Dr. Mihalic intervened in the normal operations of the UTSW registrar, to block Mr. Gilani from registering for Spring 2019 courses.  The registrar's office could not explain why this block was imposed at the time and appeared unaware that Dr. Mihalic had taken the action to prevent Mr. Gilani's registration.

30.  Subsequently, on January 17, 2019, Dr. Mihalic informed Mr. Gilani that the SPC "will" decide "to" expel him at a meeting on his future later that day.  Mr. Gilani was provided no opportunity to respond to the allegation that he had failed the remedial exam and no opportunity to attend the January 17th meeting on his future.  On information and belief, no such meeting was actually held.

31.  Then, on January 23, 2019, the SPC sent Mr. Gilani yet another letter.  On information and belief, Dr. Mihalic once more authored this letter, and of the Committee's membership, only Dr. Mihalic and the SPC's chairman even knew that the letter had been composed and sent. This letter informed Mr. Gilani of his expulsion from UTSW, based on his purported failure of the duplicative, remedial exam he was denied any opportunity to review for accuracy.

32.  That same day, Mr. Gilani received a phone call from Blake Barker, M.D. (Associate Dean of Students), informing Mr. Gilani that he must not appeal his expulsion and must voluntarily

withdraw as a student, or UTSW would charge him tuition for the Spring 2019 semester. UTSW's standard operating procedures charge students by the number of course-hours for which they register.  Again, Dr. Mihalic's unexplained prior actions had prohibited Mr. Gilani from registering for any courses for that semester.

33.  Against Dean Barker's instruction, Mr. Gilani again appealed his expulsion from UTSW. Again, an appeal of the SPC's decision was considered by the SPC itself, this time, at a meeting actually conducted on February 13, 2019, of which Mr. Gilani was for once afforded notice and at which Mr. Gilani was allowed to make an oral presentation.  On February 15, 2019, the SPC sent Mr. Gilani a letter reflecting that "the Committee did not find sufficient basis to overturn its decision to dismiss you from the medical school."

34.  Mr. Gilani further appealed the nominally appellate decision of the SPC to uphold its improperly conducted second expulsion of Mr. Gilani.  On March 8, 2019, Dean W.P. Andrew Lee, the Dean of UTSW, sent Mr. Gilani a letter, informing him that he had asked Dwain Thiele, M.D., Vice Provost of UTSW, to review "all materials relevant to your appeal" and to make a recommendation.

35.  Mr. Gilani sought to meet with Dean Lee concerning his appeal; Dean Lee refused, asserting (in violation of UTSW's written policies) that "[a]n in-person meeting is entirely discretionary." Neither Dean Lee, nor Dr. Thiele met with Mr. Gilani concerning his expulsion and appeal.

36.  On March 25, 2019, Dean Lee sent Mr. Gilani a letter informing him that Dr. Thiele "did not find sufficient basis to overturn the decision" of the SPC.  "After careful consideration," Dean Lee "decided to accept Dr. Thiele's recommendation and uphold the decision" because Mr. Gilani's "academic performance does not meet the standards required of UT Southwestern

medical students." The letter repeats basic misstatements of Mr. Gilani's record that refute any pretense that this decision followed "careful consideration" of anything, such as a word-for-word repetition of the baseless assertion repeatedly made earlier by Dr. Mihalic that UTSW had previously expelled Mr. Gilani during his first year of medical school.

37. Since Dean Lee's decision was announced, Mr. Gilani has sought to transfer to or re-enroll in a different medical school. As part of his efforts, Mr. Gilani sought the release of his transcript from UTSW. UTSW has failed to release that transcript. On July 8, 2019, Dean Lee *conceded* that UTSW was obligated to release it. Despite that admission by her superior, on July 12, 2019, Dr. Mihalic wrote to Mr. Gilani, admitting that *she* had the registrar to continue to refuse to release Mr. Gilani's transcript. UTSW has subsequently continued for an additional 32 months to refuse to release to Mr. Gilani his transcript.

38. Since the filing of this action, UTSW has contended that it has the right to refuse to release to Mr. Gilani his transcript, because he has failed to pay an outstanding charge for the Spring 2019 semester and because he has not undertaken a student-loan counseling. But Dr. Mihalic's fall-of-2018 baseless intervention at the registrar's office had barred Mr. Gilani from registering for any courses in the Spring 2019 semester, rendering any alleged outstanding tuition charge from that semester unowed. Never, before the Defendants' post-petition contention, had any of the Defendants suggested to Mr. Gilani that he must complete student-loan counseling in order to obtain his academic records (a position earlier belied in writing by Dr. Lee). On information and belief, the Defendants' post-petition rationalization is baseless, a smoke-screen to cover Dr. Mihalic's spiteful refusal to release to Mr. Gilani his transcript as it is obligated to do, and as promised by Dr. Lee.

39.  In the same July 12th email described in Paragraph 37, Dr. Mihalic informed Mr. Gilani that on behalf of UTSW, she, alone, would correspond with the medical school at which he was then seeking to enroll.  On information and belief, Dr. Mihalic subsequently sent such a letter to the UT-Dell Medical School in Austin, substantially misstating the facts of Mr. Gilani's case and misrepresenting Mr. Gilani's qualifications.

40. Subsequent events further disproved the accuracy of UTSW's formal contention that Mr. Gilani's "academic performance does not meet the standards required of UT Southwestern medical students."  While at UTSW, in his role as the President of the UTSW Texas Medical Association Medical Student Chapter, Mr. Gilani  helped design a *Dallas Patient Navigator Program*, as well as to craft and submit a related grant application to the TMA Foundation on behalf of the Chapter and UTSW.  In December 2020, the Foundation announced that it had "selected" Mr. Gilani's proposal "as the top winner of the prestigious 2021 TMA Foundation John P. McGovern Champion Health Award[,]" which entailed delivery to UTSW of both "a $7,500 grant to support the winning program, as well as a beautiful bronze Champion of Health Statue."  Far from falling below UTSW's standards, here, too, an objective, outside-party recognized Mr. Gilani's work as bringing credit to UTSW.

41. So why did UTSW so treat Mr. Gilani?

42. Multiple whistleblowers within UTSW's faculty provided Mr. Gilani an answer, informing him that UTSW treated him as it did throughout the foregoing because of his race.  These whistleblowers include Dr. Abdelnaby (his faculty supervisor over the fateful summer in Uganda) and UTSW's Global Health Coordinator Dr. Rasha Babikir.

43. Their explanation that Dr. Mihalic is overtly racist in her dealings with students squares with the

observations of countless students and at least one additional UTSW faculty member – Dr. Shawna Nesbitt –.

44. It squares with the past public history of Dr. Mihalic's and UTSW's discriminatory treatment of medical students.

45. It also squares with the fact that, over this entire period, UTSW's treatment of Mr. Gilani dramatically differed from its treatment of his similarly-situated peers of different races.  The same summer that Mr. Gilani went to Uganda, Taylore King and Christian Davidson (two of his White and Hispanic classmates) traveled to Bangkok, Thailand, also under the UTSW faculty supervision of Dr. Abdelnaby.  Now-Dr. King and Now-Dr. Davidson performed substantially less work in Thailand than did Mr. Gilani in Uganda.  Now-Dr. King and now-Dr. Davidson travelled away from Bangkok (the place of their studies during their stay) far more than did Mr. Gilani, taking leisure-trips to Siem Reap, Cambodia, to Phuket Island, Thailand, and to Koi Phi Phi Island, Thailand.  Yet UTSW placed no scrutiny on now-Dr. King's and now-Dr. Davidson's travels or work performed and each has gone on to graduate.  Such scrutiny was reserved for Mr. Gilani's trip to Uganda and work on AIDS in Africa, not for now-Dr. King and now-Dr. Davidson's trip to Thailand and work on their tans.

46. Similarly, UTSW's treatment of Mr. Gilani throughout the foregoing differed from its treatment of other peers of other races who failed the same classes or other, more critical exams.

47. As one example, an Asian-American classmate named Trung Nguyen took the GI Block contemporaneously with Mr. Gilani and also received a failing grade on the initial exam.  Like Mr. Gilani, Mr. Nguyen also took and received a failing grade on the "remedial" exam that followed.  From all information currently available to Mr. Gilani, though, unlike Mr. Gilani, Mr.

Nguyen failed the GI Block exam both times without any administrative hijinks manufacturing that result. Also unlike Mr. Gilani, Mr. Nguyen suffered no ramifications from those failures. UTSW did not respond by expelling or disciplining Mr. Nguyen; instead, it continued to work with him until his eventual graduation. UTSW simply treated now-Dr. Nguyen entirely differently than it treated Mr. Gilani for failing the same pair of exams.

48. As another example, Caroline Flowers – a fellow UTSW student, who is White – followed up on a less-than-exemplary performance on her first five (5) exams at UTSW by failing the U.S. Medical Licensing Step 1 Exam. At most medical schools, a student's failure of the US MLE Step 1 exam is deemed career-ending and triggers an automatic dismissal. But not here. Unlike Mr. Gilani, Ms. Flowers suffered no ramifications from her failure. Instead of responding by expelling or disciplining Ms. Flowers, , UTSW continued to work with her until her eventual graduation. UTSW simply treated now-Dr. Flowers entirely differently than it treated Mr. Gilani when he failed fewer classes and did not fail any national exam of comparable importance.

49. Simply put, the long string of UTSW's departures from its published policies in its handling of Mr. Gilani's case; the on-point word of whistleblowers; and the discrepancies between UTSW's treatment of Mr. Gilani's situation and that of similarly situated medical students of other races all point toward a conclusion that the totality of UTSW's actions throughout this affair were taken with discriminatory intent.

50. Specifically, this evidence points toward the conclusion that a racially discriminatory intent underlay:

    a. UTSW's serial failure to afford Mr. Gilani the process he was due as a matter of both UTSW policy and of federal law;

b.  UTSW's initial, disparate, substantive treatment of Mr. Gilani's time in Uganda;

c.  UTSW's resulting imposition of an unjustified, unearned "academic warning;"

d.  UTSW's disparate, substantive treatment of Mr. Gilani's GI Block exam to manufacture a failing grade;

e.  UTSW's December expulsion of Mr. Gilani, its revocation of that expulsion but retention of an unjustified, unearned "academic probation," coupled with a requirement that he "remediate" his manufactured-failure of the GI Block by retaking an exam he had already passed;

f.  UTSW's disparate, substantive treatment of the grading of that exam to again produce a failing grade;

g.  UTSW's disparate, substantive treatment of Mr. Gilani's failure of that exam;

h.  UTSW's resulting final expulsion of Mr. Gilani; and

i.  UTSW's subsequent, spiteful efforts to prevent Mr. Gilani from continuing his medical education elsewhere, including UTSW's ongoing refusal to release to Mr. Gilani his transcript.

## V.  Cause of Action 1: UTSW's Violation of Title VI

51.  Plaintiff incorporates the allegations in the foregoing paragraphs as if set both herein verbatim.

52.  Title VI prohibits discrimination based on race, color, and national origin in programs and activities receiving federal financial assistance.

53.  Title VI by extension bars the imposition of university discipline where race is a motivating factor in the decision to discipline a student and/or in the decision of how to discipline a student.  Title VI is enforceable through a private right of action.

54. As a result of UTSW's behavior, Mr. Gilani's civil rights have been violated.

55. Mr. Gilani met the essential eligibility requirements of UTSW as he was admitted to the school and remediated his first-year courses upon returning from leave of absence that UTSW approved, and exhibited more than sufficient performance at the school, outside of the two grades discussed above, both of which appear to have been issued illegitimately.

56. The entirety of Mr. Gilani's treatment concerning his work in Uganda and the GI Block demonstrate that he was treated in an adverse manner, by UTSW.

57. Multiple factors serve as evidence that UTSW's adverse treatment of Mr. Gilani was taken with an intent to discriminate against him due to his race and ethnicity.

58. Prominently among them are UTSW's repeated and flagrant violations of its established, published, disciplinary procedures throughout Mr. Gilani's ordeal. These violations include those set out more fully, below, in paragraphs 72 - 82 (which are incorporated, here, by reference). Without excluding those details described more fully elsewhere in this Complaint, these violations of established procedure included:

(a) UTSW repeatedly denying Mr. Gilani prior notice of proceedings against him;

(b) UTSW consistently denying Mr. Gilani access to all the evidence used against him and considered by the UTSW administration and its internal tribunal in its deliberations concerning his future;

(c) UTSW denying Mr. Gilani the opportunity to cross-examine his accusers;

(d) UTSW denying Mr. Gilani consideration of the allegations against him by a different party than his accuser/investigator;

(e) UTSW denying Mr. Gilani the right to appeal his treatment to a separate decision-maker

than that which had initially condemned him; and

(f)  UTSW denying Mr. Gilani a thoughtful final appeal of the merits of his case.

59. Among them is the documented history of UTSW and Dr. Mihalic ignoring the due process rights of medical students at UTSW in expulsion proceedings.  This history includes the violations documented in: (a) *Shah v. Tex. Sw. Med. Sch.*, 54 F.Supp.3d 681 (Tex. N.D. 2014); and (b) *Oliver v. Univ. of Tex. Sw. Med. Sch., Mihalic, and Williamson*, 2019 U.S. Dist. LEXIS 21289 (Tex. N.D. 2019).

60. Among them are the admissions of multiple whistleblowers then within UTSW, who have informed Mr. Gilani that UTSW treated him as disparately as it did it due to his race.

61. Among them are the differential treatment of other UTSW students (of different races), whose foreign trips were demonstrably less productive than Mr. Gilani's and involved substantially more travel than Mr. Gilani's, yet suffered no ramifications of any kind and have since graduated. Examples of such objectively more objectionable foreign junkets, which bore no negative consequences for Mr. Gilani's former fellow-UTSW students, include those undertaken by: now-Dr. Davidson and now-Dr. King.  The distinction between the total absence of negative consequences for these students and the intensity of UTSW's treatment of Mr. Gilani are not explicable without reference to the races of now-Dr. Davidson, now-Dr. King, and Mr. Gilani.

62. Among them is the pattern of other UTSW students (of different races), who failed either the same GI Block course or other, more central courses, in either case, without the need for administrative jiggery-pokery to produce such results, who were not expelled and have since graduated.  These students include now-Dr. Nguyen and now-Dr. Flowers.  The differential treatment by UTSW of now-Dr. Nguyen, now Dr. Flowers, and Mr. Gilani demonstrate that his

treatment resulted not from Mr. Gilani's failure of a course (which, as discussed above, there is abundant reason to believe he did not actually fail), but from his (engineered-by-UTSW) failing of that course, while being of his particular race.

63. Mr. Gilani was wrongfully targeted because of his race through UTSW's discriminatory behavior that led to his wrongful dismissal in violation of Title VI.

64. As a result of the Defendants' actions against the Plaintiff, motivated by their racial bias, Mr. Gilani was injured by being improperly expelled, and kicked off campus, his reputation suffering permanent damage. He was denied due process and has been (at least so far) barred from obtaining a medical education, all of which has caused mental anguish.

65. Mr. Gilani seeks from UTSW recovery of these damages and of his reasonably incurred, related attorney's fees.

### VI. Cause of Action 2: Individual Defendants' Violation of 42 U.S.C. § 1983

66. Mr. Gilani incorporates the allegations in the foregoing paragraphs as if set both herein verbatim.

67. Mr. Gilani had a right under clearly established federal law to due process. Under the policies of UTSW and/or federal law, he had the right to hear the evidence against him, to respond to that evidence before being expelled, and to a fair and legitimate disciplinary process in all hearings.

68. Instead, Mr. Gilani was consistently denied the process he was due before being denied his liberty and reputational interests through an illegitimate set of disciplinary procedures.

69. Per § 1983, in order for a person's constitutional liberties to be protected, he must be given notice, the opportunity to be heard, and an impartial decision maker.

70. UTSW has a well-established set of policies, applicable to his situation from the jump, which

were systematically violated throughout by Dr. Mihalic, the other members of the SPC, Dr. Barker, Dr. Thiele, and Dean Lee. These individuals acted under color of state law as individuals.

71. As a result of the individual Defendants' unlawful conduct, Mr. Gilani was wrongfully deprived of his property and or liberty interest in completing his education at UTSW. As a result, he has suffered mental anguish, inconvenience, loss of enjoyment of life, humiliation, and damage to his reputation.

72. Mr. Gilani was promised an opportunity to respond to the SPC's concerns with his Uganda trip before it reached a decision on his related grade; the SPC denied him that opportunity. Dr. Mihalic and the rest of the SPC denied Mr. Gilani the notice he was required of its October 10, 2018 meeting at which it placed him on academic probation. They denied him any opportunity to respond to the allegations against him. At that improperly conducted meeting (if it occurred), Dr. Mihalic and the other members of the SPC based that grade on demonstrably false allegations, of which UTSW had documented evidence of the inaccuracy. There was no basis for the imposition of academic probation onto Mr. Gilani by Dr. Mihalic and the other members of the SPC, which allowed the rest of this story to unfold.

73. Mr. Gilani's GI Block failure was engineered, intentionally, by denying him the curve applied to all his classmates. On information and belief, that failure, too, was engineered by Dr. Mihalic. Applying a curve to *everyone but one student* is demonstrably out of keeping with the most basic expectations of a fair process.

74. Dr. Mihalic and the other members of the SPC next denied Mr. Gilani any notice of its intent to conduct its December 5, 2018 meeting on his future (if one occurred). They denied Mr.

Gilani any opportunity to respond to the allegation that he had failed the GI Block exam. Nonetheless, as a result of that improperly conducted meeting (if it occurred), they decided to expel Mr. Gilani.

75. When Mr. Gilani appealed that improper expulsion, Dr. Mihalic and the other members of the SPC met on December 17, 2018 as their own appellate forum. This violated UTSW's express, written policies. Following that improperly conducted appeal, they correctly reversed Mr. Gilani's expulsion, but kept in place a still-unjustified academic probation and wrongly required Mr. Gilani to retake the GI Block exam that he had already passed (if judged under the same standards as had been all his classmates).

76. Roughly contemporaneously, in violation of UTSW policy and with no explained justification, Dr. Mihalic secretly intervened in the registrar's office to block Mr. Gilani from registering for 2019 classes.

77. Next, someone altered UTSW's standard operating procedures to compel the hand-scoring of Mr. Gilani's improperly required "remedial" GI Block exam. On information and belief, that someone was Dr. Mihalic. As a result of the resulting departures from UTSW's standard operating procedures, Mr. Gilani was denied, first, any initial scoring of his "remedial" exam. He was subsequently denied the chance to review the nominally hand-scored "remedial" exam, in violation of both UTSW's express written policies and federal law.

78. On January 17, 2019, Dr. Mihalic informed Mr. Gilani that the SPC would meet *that day* to expel him. This same-day tip-off was demonstrably insufficient notice to afford Mr. Gilani the fair process he was due. Dr. Mihalic (and the other members of the SPC) afforded Mr. Gilani no opportunity to respond at or before that meeting. Nonetheless, as reflected in Dr. Mihalic's

January 23, 2019 letter, nominally as a result of that improperly conducted meeting (if it occurred), they again decided to expel Mr. Gilani.

79.  Before Mr. Gilani again appealed a wrongful expulsion, Dr. Barker contacted him, pressuring Mr. Gilani not to appeal his wrongful expulsion and expressly threatening, unless he so forbore from exercising his legal rights, to charge Mr. Gilani tuition for 2019 courses in which Dr. Mihalic had wrongly barred him from enrolling.  Such pressure, from a state official to forebear an exercise of one's due process rights, is itself a due process violation.

80.  When Mr. Gilani nonetheless appealed that improper expulsion decision, Dr. Mihalic and the other members of the SPC again met as their own appellate forum.  This again violated UTSW's express, written policies.

81.  Given Mr. Gilani's performance across the rest of medical school, and the improprieties of Mr. Gilani's grades issued with regard to the Uganda trip and the GI Block, Dr. Mihalic's February 15, 2019 letter, announcing that the SPC "did not find sufficient basis to overturn its decision to dismiss you from the medical school" cannot be interpreted as a good-faith, minimally fair conclusion of a neutral arbiter.

82.  When Mr. Gilani further appealed the nominally appellate decision of the SPC to uphold its improperly conducted second expulsion, Dean Lee and Dr. Thiele refused to meet with him in person, in violation of UTSW's express, written policies.  Their resulting conclusion repeated Dr. Mihalic's repeated, inexplicable misstatement of basic facts of Mr. Gilani's record at UTSW (for example, Dr. Mihalic repeatedly insisted that Mr. Gilani had been expelled from UTSW during his first year as a medical student, an allegation the final letter repeats word-for-word, despite the fact that no such prior expulsion ever occurred), so demonstrating that the final

appeal, too, was a pro forma sham that involved no "careful consideration" of anything.

83. Mr. Gilani seeks to recover his damages from the individual defendants responsible for them, in their personal capacities.

84. The individual Defendants, in their personal capacities, are not entitled to federal immunity from liability to Mr. Gilani on his § 1983 claims for damages.

85. Mr. Gilani has been required to obtain the assistance of counsel to represent him in this matter, for which he is entitled to recover under federal law.[1]

## VII.    Cause of Action 3: Violation by UTSW of Due Process under the 14th Amendment to the U.S. Constitution

86. Plaintiff incorporates the allegations in the foregoing paragraphs as if set both herein verbatim.

87. Mr. Gilani had a right under clearly established federal law to due process and to hear the evidence against him, respond to that evidence before being expelled, and to a fair and legitimate disciplinary process in all hearings.

88. Instead, Mr. Gilani was consistently denied the process he was due before being denied his liberty and reputational interests through an illegitimate set of disciplinary processes.

89. Per the Due Process Clause of the 14th Amendment, Mr. Gilani was denied both procedural and substantive due process.  As a result, he has suffered mental anguish, inconvenience, loss of enjoyment of live, humiliation, and damage to his reputation.

90. There cannot be qualified immunity in this instance, because any reasonable person would have known such basic constitutional standards as due process must be followed, and because the law

---

[1]    42 U.S.C. 1988(b).

applicable to this matter was indeed  known to the Defendants at the time of their misconduct.

91.  Moreover, the Defendants continue to this day to deprive the Plaintiff of his property interest in continuing his medical education.  The statements Defendant Dr. Mihalic made to other institutions to interfere with his ability to continue his medical education painted Mr. Gilani in a negative light to another medical school where he was trying to continue pursuing his medical career.[2]  In doing so, Dr. Mihalic published a false statement to another medical school. By misstating the facts and misrepresenting Mr. Gilani.  Dr. Mihalic knew that the statements were false and were misrepresentations, and that making them would endanger his interest in continuing his medical education.

92.  Plaintiff had and has a protectable liberty interest, recognized under the US Constitution, in pursuing a medical school education.[3]

93. To reiterate from above, UTSW has a well-established set of policies, applicable to his disciplinary procedure, which were systematically violated by UTSW.  The behaviors identified above, including those detailed in Paragraphs 71-81, continually violated those policies, in violation of Mr. Gilani's rights.

94. What process the Plaintiff is due as a matter of constitutional law is measured by a flexible standard that depends on the practical requirements of the circumstances.[4]  The three factors that must be weighed to examine the Defendants' actions under this standard, are (1) the

---

[2]   *Hancock v. Variyam*, 400 S.W.3d 59 (Tex. 2013).

[3]   *University of Texas Medical School at Houston v. Than*, 901 S.W.2d 926, 930 (1995); *Dixon v. Alabama State Bd. Of Educ.*, 294 F.2d 150, 157 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); U.S. Const. Amend. XIV.

[4]   Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); Goss v. Lopez, 419 U.S. 565, 578, 95 S.Ct. 729, 738-39, 42 L.Ed.2d 725 (1975).

Plaintiffs' private interest that will be affected by the Defendants' official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Defendant-government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[5]

95. The Confrontation Clause of the U.S. Constitution is well known as an essential protection of due process.[6]

96. So, at a very minimum, when UTSW seeks to sanction a student, such as Mr. Gilani, for misconduct, due process requires oral or written notice of the charges against the student before action is taken and, if the student denies them, an explanation of the evidence the authorities have and an opportunity to present his or her side of the story.[7]   The Plaintiff never got this chance in a constitutionally sufficient manner.

97. Moreover, clear law establishes that presentation of *ex parte* evidence to the hearing officer that she refuses to share with the student denies the student due process, and requires a new hearing.[8] UTSW and the individual defendants (in their personal and/or official capacities) knew this at the times relevant to Mr. Gilani's treatment, from (among other sources) UTSW and Dr. Mihalic having not only been sued for similar misconduct in an expulsion previously, but from having been so sued more than once based on Dr. Mihalic's actions.

98. Mr. Gilani seeks to recover his damages from these violations of his Constitutional rights from

---

[5]   *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903; *Than*, 901 S.W.2d at 930.
[6]   U.S. Const. Amend. VI, XIV.
[7]   *Than*, 901 S.W.2d at 931.
[8]   *Than*, 901 S.W.2d at 932-33.

UTSW.

## VIII. Injunctive Relief

### A.  Request for Injunctive Relief

99.  In light of the above-described facts, the Plaintiff seeks recovery of his damages from the various Defendants as described above.

100.    The Plaintiff also seeks injunctive relief to address the Defendants' violation of the rights of the Plaintiff.  Specifically, the Plaintiff seeks an injunction ordering UTSW and the individual defendants in their *official* capacities to: (a) correct his transcript to reflect the passing grades in his GI Block course and his Global Health Summer Research Elective that Mr. Gilani earned, rather than the false grades ascribed to him through the violations described, above; and (b) correct his transcript to reflect removal of the unjustified disciplinary actions; (c) remove the outstanding tuition charge for the Spring 2019 semester; and (d)  halt their ongoing, illegitimate, illegal refusal to release to Mr. Gilani his educational records, including both his transcript and all records relevant to his grades achieved in all courses at UTSW.

### B.  Basic Law of Injunctions

At least the individual Defendants, in their official capacities, are subject to this Court's power to issue prospective injunctive relief.

101.    An injunction is a remedial writ,[9] the purpose of which is to maintain the status quo between the parties until the next procedural step or stage of the case on the merits can be heard.[10]

---

[9]    *Qwest Communications Corp. v. AT&T Corp.,* 24 S.W.3d 334, 336 (Tex. 2000); *EMC Mortg. Corp. v. Jones,* 252 S.W.3d 857, 868 (Tex. App.-Dallas 2008, no pet.).

[10]    *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204, (Tex. 2002); *Williard Capital Corp. v. Johnson,* 2017 Tex. App. LEXIS 7844 (Tex. App.Houston [14th Dist.] August 17, 2017, no pet.).

102.

103.    When the circumstances justify it, as they do here, the trial court has the authority to grant the Plaintiff's request.[11]

### C. Conditions Precedent

104.    All conditions precedent have been performed or have occurred.

## IX. ATTORNEY'S FEES

105.    Mr. Gilani also seeks to recover all costs and reasonable and necessary attorney's fees he has incurred (and will incur) in this litigation, including all fees necessary to the litigation and appeal of this matter in the event of an appeal of this cause to any and all courts.  Mr. Gilani seeks to recover such fees under federal law and the law of Texas.

## VII. PRAYER

106.    WHEREFORE, PREMISES WHEREFORE, PREMISES CONSIDERED, and being that there exists a genuine controversy between the parties,  Mr. Gilani prays that:

  i.    The injunctive relief described above be granted and the requisite injunctive orders issue against UTSW and the individual Defendants in their *official* capacities;

  ii.     On final trial hereof, the Court enter a final declaration finding that the Defendant(s), in their various capacities as described above, have violated the 14th Amendment to the U.S Constitution,  Title VI, and §  1983;

  iii.    Plaintiff be awarded judgment for his damages (currently estimated in excess of $50 million dollars), against UTSW and the individual Defendants in their *personal* capacities;

---

[11]    *RP&R, Inc. v. Territo*, 32 S.W.3d 396, 400 (Tex. App.-Houston [14th Dist.] 2000, no pet.).

Cause No. No. 3:21-cv-01461-X
Al Gilani v. University of Texas Southwestern Medical Center
*Plaintiff's First Amended Complaint*

iv.  Plaintiff be awarded his attorney's fees and costs (from the jointly and severally liable

Defendants); and

v.  Plaintiff be granted any other and further relief to which he is entitled.


RESPECTFULLY SUBMITTED April 22, 2022


By:  GUEST & GRAY, P.C.

/s/     *Elizabeth D. Alvarez*

Guest & Gray, P.C
Elizabeth D. Alvarez
Texas Bar No. 24071942

Scott Gray
Texas Bar No. 24043701

Daniel I. Morenoff

Texas Bar No. 24032760
315 S. Bois D'Arc St.
Forney, Texas 75126

Tel. (972) 564-4644
Fax. (866) 209-9785
E: alvarez@guestandgray.com
E: scott@guestandgray.com
E: dan@guestandgray.com

## CERTIFICATE OF SERVICE

This is to certify that on April 22, 2022, a true and correct copy of the foregoing was served on all counsel of record.


/s/Elizabeth Alvarez
Elizabeth Alvarez