IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AL GILANI, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:21-CV-1461-N |
| UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, *et al.*, | § § § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendants University of Texas Southwestern Medical Center ("UT Southwestern"), Angela Mihalic, Blake Barker, Andrew Lee, and Dwain Thiele's (collectively, the "Individual Defendants") motion to dismiss [18]. The Court concludes that Plaintiff Al Gilani has failed to state procedural and substantive due process claims. However, Gilani has stated a plausible Title VI claim. Accordingly, the Court grants in part and denies in part the motion.[1]

**I. GILANI'S DISMISSAL FROM UT SOUTHWESTERN**

This case arises out of Gilani's dismissal from UT Southwestern in March 2019. Pl.'s First. Am. Compl. ¶ 36 [15]. Gilani began medical school at UT Southwestern in the fall of 2016. *Id.* ¶ 16. In 2018, UT Southwestern's Student Promotions Committee

---

[1] Defendants' motion to stay discovery [22] is denied as moot.

MEMORANDUM OPINION AND ORDER – PAGE 1

("SPC") placed Gilani on academic probation after it determined that Gilani failed a global health summer research elective in Uganda. *Id.* ¶¶ 17–23. While on academic probation, Gilani allegedly failed the gastrointestinal systems course ("GI Course"), and the SPC dismissed him from medical school. *Id.* ¶¶ 24–27. Gilani successfully appealed his dismissal, however, and the SPC reinstated him on the condition that he remediate the GI Course and remain on academic probation. *Id.* ¶ 27. When Gilani failed the GI Course remediation, the SPC dismissed him a second time. *Id.* ¶¶ 28, 31. Gilani again appealed his dismissal but was unsuccessful. *Id.* ¶¶ 33–34.

In March 2021, Gilani brought suit in Texas state court against UT Southwestern and four members of its academic administration. Defendants subsequently removed the case to this Court and filed a motion for judgement on the pleadings [6]. The Court granted the motion in part and granted Gilani leave to amend. Order Granting in Part Mot. J. Pleadings 1 [14]. In April 2022, Gilani filed his First Amended Complaint alleging two causes of action: (1) Fourteenth Amendment due process violations[2] against the Individual Defendants in their official and personal capacities; and (2) intentional discrimination under Title VI of the Civil Rights Act of 1964[3] against UT Southwestern. Defendants now move to dismiss both claims.

## II. RULE 12(b)(6) LEGAL STANDARD

When addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the plaintiff has asserted a legally sufficient claim

---

[2] Brought under 42 U.S.C. § 1983.
[3] Codified at 42 U.S.C. § 2000d, *et seq.*

MEMORANDUM OPINION AND ORDER – PAGE 2

for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted). Thus, a district court may properly consider contracts or other documents that are not attached to the complaint, but are referenced within it and attached to a defendant's Rule 12(b)(6) motion. *See Inclusive Cmtys. Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

A viable complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.* (internal citations omitted).

### III. IMMUNITY FROM SECTION 1983 CLAIMS

The Individual Defendants assert sovereign immunity and qualified immunity against Gilani's section 1983 claims.[4]  Defs.' Mot. Dismiss 6–13.  The Court concludes that Gilani's claims for injunctive relief against the Individual Defendants in their official capacities are not barred by sovereign immunity.  However, the Court holds that the Individual Defendants in their personal capacities may invoke qualified immunity.

#### *A.  Ex Parte Young Applies*

It is well-established that the Eleventh Amendment affords nonconsenting states constitutional immunity in both federal and state courts.[5]  *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 748 (1999); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71, (1989); *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996).  "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities."  *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002) (citing *In re Ayers*, 123 U.S. 443, 505 (1887)).  Similarly, state officials enjoy immunity.  Because a state cannot act but through its officials, a suit against a state official in his or her official capacity is, de facto, a suit against the state.  *McCarthy ex rel. Travis*

---

[4] Defendants also argue that UT Southwestern has sovereign immunity against Gilani's section 1983 claims.  Defs.' Mot. Dismiss 6–8.  However, Gilani reiterates in his response that he asserts no section 1983 claims against UT Southwestern.  Pl.'s Br. Supp. Resp. Mot. Dismiss 10 [23-1].

[5] Sovereign immunity includes both immunity from suit and immunity from liability.  *Meyers ex rel. Benzig v. Texas*, 410 F.3d 236, 252–53 (5th Cir. 2005).  Here, Defendants waived immunity from suit by removing this case to federal court; however, removal does not waive immunity from liability.  *See id.* at 255.

MEMORANDUM OPINION AND ORDER – PAGE 4

*v. Hawkins*, 381 F.3d 407, 414 (5th Cir. 2004). However, the Eleventh Amendment's proscription is not absolute.

Recognizing that the Eleventh Amendment threatened to render federal courts powerless to prevent state violations of the Constitution, the Supreme Court carved out a narrow exception in *Ex parte Young*, permitting courts to grant injunctive relief against state officers to preserve the Constitution as the "supreme law of the land." *Alden*, 527 U.S. at 747; *see also McCarthy*, 381 F.3d at 412. However, the Supreme Court has curtailed *Ex parte Young's* diminution of the Eleventh Amendment by limiting its availability to only extraordinary circumstances. According to the Supreme Court, extraordinary circumstances are those in which a suit is filed (1) against a state official, (2) seeking only prospective injunctive relief, (3) to end a "continuing violation of federal law." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996). Thus, "to avoid an Eleventh Amendment bar by means of *Ex parte Young*, 'a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 344–45 (5th Cir. 2013) (alteration in original) (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)).

In this case, Gilani seeks three forms of injunctive relief: (1) correction of his transcript to reflect passing grades and no disciplinary actions; (2) release of his transcript; and (3) removal of an outstanding tuition charge. First Am. Compl. ¶ 100. The Court holds that *Ex parte Young* applies to both transcript requests, but not the request to remove the tuition charge.

MEMORANDUM OPINION AND ORDER – PAGE 5

***1. The Request for Transcript Corrections Satisfies Ex parte Young.*** – Defendants argue that the transcript changes contravene *Ex parte Young* because they are merely attempts to undue past wrongdoings. Defs.' Mot. Dismiss 8–9. The Court disagrees. First, the relief sought is prospective in effect. The injunction would require the Individual Defendants to remove any disciplinary action from Gilani's records, as well as correct his transcript to reflect passing grades in the GI Course and Global Health Summer Research Elective.

Second, the relief sought would remedy an alleged ongoing violation of federal law.[6] This Court has previously held that interference with a constitutionally protected liberty or property interest, such as attending medical school, constitutes an ongoing violation under *Ex parte Young*. *Shah v. Univ. of Tex. Southwestern Med. Sch.*, 129 F. Supp. 3d 480, 496 (N.D. Tex. 2015) (holding that plaintiff's request for a transcript correction was not barred by the Eleventh Amendment because defendant deprived him of his constitutional right to attend another medical school), *aff'd*, 668 F. App'x 88 (5th Cir. 2016) ("[T]he analysis, reasoning, and conclusions of the district court are not only comprehensive and correct, but . . . our writing separately is unnecessary.").

Here, Gilani's complaint states that he has sought to transfer or re-enroll in another medical school. First Am. Compl. ¶ 37. Therefore, every time he applies to medical school, UT Southwestern will send the deficient transcript with two failing grades and a disciplinary note. Sending this transcript may well prevent his acceptance into another

---

[6] This Order of course does not address the merits of Gilani's claims, but only the sufficiency of his pleadings.

MEMORANDUM OPINION AND ORDER – PAGE 6

medical school, which will further deprive him of his protected property interest. *See Shah*, 129 F. Supp. 3d at 496; *see also Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (holding that *Ex parte Young* exception applied to claims by student seeking to expunge failing grade and plagiarism conviction). Although Gilani does not explicitly use the words "ongoing violation," at the motion to dismiss stage, the Court may draw reasonable inferences based on the facts set forth in the complaint. *See Ashcroft*, 556 U.S. at 678. The Court thus concludes that Gilani's request for transcript corrections satisfy *Ex Parte Young* and are not barred by the Eleventh Amendment.

    **2.   *The Request for Release of Academic Records Satisfies Ex parte Young.* –** Gilani seeks injunctive relief requiring the Individual Defendants to release his transcript and other relevant academic records. First. Am. Compl. ¶ 100. Defendants concede that this relief is prospective in effect but argue that Gilani has not alleged that it would remedy an ongoing violation of his due process rights. Defs.' Mot. Dismiss 9–10. As discussed above, however, the Court can reasonably infer allegations of an ongoing violation based on the complaint. Like the transcript issues, refusal to release academic records potentially interferes with Gilani's constitutionally protected interest in attending medical school. The Individual Defendants' ongoing refusal to release his records precludes his ability to provide the documents necessary to apply to other schools. Accordingly, the Court concludes that Gilani's request for his transcript and academic records satisfies *Ex parte*

*Young*.[7]  *See Va. Off. For Prot. & Advoc.*, 563 U.S. 247, 255–56 (2011) (holding that refusal to release medical records constitutes an ongoing violation).

### 3. *Gilani Has Not Shown That Removing the Tuition Charge Would Remedy an Ongoing Violation.* 

– Gilani seeks injunctive relief requiring the Individual Defendants to remove an outstanding tuition charge for the spring 2019 semester. First. Am. Compl. ¶ 100. This relief is prospective in effect. However, Gilani has not alleged, and it is not clear from the complaint, how this relief would remedy an ongoing violation of federal law. Accordingly, the Court holds that such relief is barred by the Eleventh Amendment.

### B. *The Individual Defendants Did Not Waive Qualified Immunity*

"Qualified immunity is a defense available to public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Tex. Dep't of Human Res.*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231

---

[7] The Court rejects Defendants' argument that *Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020), requires dismissal of claims against the Individual Defendants not directly involved in withholding Gilani's transcript. That precedent applies when plaintiffs challenge the constitutionality of a state law, and it requires a close connection between a state actor and the challenged statute. *Id.* at 179. Here, Gilani does not challenge a state law. Regardless, the Individual Defendants have not argued that they lack the authority to release Gilani's records.

MEMORANDUM OPINION AND ORDER – PAGE 8

(2009). Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In this case, the Individual Defendants have properly raised qualified immunity. The Court rejects Gilani's argument that Defendants waived qualified immunity by removing this case from Texas state court and raising the defense in a Rule 12(b)(6) motion. First, removal does not preclude defendants from asserting qualified immunity. *See, e.g.*, *Skinner v. Gragg*, 650 F. App'x 214, 217–18 (5th Cir. 2016). Second, although qualified immunity is an affirmative defense, defendants may raise it in a motion to dismiss for failure to state a claim.[8] *See, e.g.*, *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

Because the Individual Defendants have properly asserted qualified immunity, the Court must assess Gilani's section 1983 claims to determine (1) whether he has shown a violation of a constitutional right, and if so, (2) whether that right was "clearly established" at the time of the public official's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At the motion to dismiss stage, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

---

[8] Defendants also raised qualified immunity in their original answer in state court. Additional Attach. Notice Removal, Defs.' Original Answer 2 [2-3].

MEMORANDUM OPINION AND ORDER – PAGE 9

## VI. SECTION 1983 CLAIMS

To state a section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (internal citations omitted). Gilani alleges that the Individual Defendants violated his procedural and substantive due process rights by interfering with his protected interest in continuing medical school.[9] Both claims fail.

### A. Gilani Has Failed to State a Procedural Due Process Claim

The Due Process Clause requires that an individual have "an opportunity to be heard at a meaningful time and in a meaningful manner" before he is deprived of a property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations omitted). This requirement is "flexible and calls for such procedural protections as the particular situation demands." *Shah*, 129 F. Supp. 3d at 498. For students dismissed from a public university, due process requirements depend on whether the dismissal was disciplinary or academic.

For students dismissed for disciplinary reasons, due process requires that "the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). An academic dismissal, however, requires only that the student have meaningful notice and an opportunity to respond. *Davis*

---

[9] The Supreme Court and Fifth Circuit have assumed, without deciding, that students have a protected interest in public higher education. *Shah*, 129 F. Supp. 3d at 497 (collecting cases assuming due process right to attend medical school).

MEMORANDUM OPINION AND ORDER – PAGE 10

*v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989) (citing *Mathews*, 424 U.S. at 333). A hearing is not required. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). Here, even construing the facts in the light most favorable to Gilani, the Court concludes that his dismissal was academic and UT Southwestern provided the requisite procedures.

    ***1. Gilani's Dismissal Was Academic, Not Disciplinary.*** – "A student is dismissed for disciplinary reasons when he violates a valid rule of conduct." *Aragona v. Berry*, 2012 WL 467069, at *5 (N.D. Tex. 2012) (citing *Horowitz*, 435 U.S. at 87). In contrast, a medical student's dismissal is academic when the decision "rest[s] on the academic judgment of school officials that [the student] did not have the necessary clinical ability to perform adequately as a medical doctor." *Horowitz*, 435 U.S. at 89–90; *see also Mathai v. Bd. of Supervisors of La. State Univ. & Agr. & Mech. Coll.*, 959 F. Supp. 2d 951, 960 (E.D. La. 2013) ("[A]n academic dismissal will be found where a student's scholarship or conduct reflects on the personal qualities necessary to succeed in the field in which he or she is studying and is based on an at least partially subjective appraisal of those qualities.") (citations and internal quotation marks omitted); *Aragona*, 2012 WL 467069, at *6 (holding that dismissal was academic where there was no evidence to suggest that dental student was punished for behavioral misconduct, and, instead, that student's "problems stem[med] largely from his inability to act professionally in his clinical responsibilities.").

    Although Gilani characterizes his dismissal as disciplinary, the complaint and referenced documents show that it was academic. Gilani alleges that UT Southwestern placed him on academic probation based on "accusations that [he] made misrepresentations regarding his research timeline and travel during his time in Uganda." First. Am. Compl.

MEMORANDUM OPINION AND ORDER – PAGE 11

¶ 22. He argues that this action constitutes discipline for academic dishonesty, which entitles him to the protections of a disciplinary dismissal.[10] But UT Southwestern's letter regarding Gilani's failure of the summer research course indicates that he was also not meeting course expectations. The letter states that Gilani was approved for an eight-week study, but he was in Uganda for only two weeks and failed to complete his research project. Defs.' App. 1–2 [8].[11] Further, it states that his conduct during the course raised professionalism concerns based on his inability to take constructive feedback, maintain communication with course instructors, and show due diligence in his responsibilities. *Id.*

UT Southwestern's cited reasons for Gilani's failure go beyond accusations of academic dishonesty. *See Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926 (Tex. 1995) (holding that dismissal for cheating on a test was disciplinary rather than academic). Instead, they include judgments of his performance consistent with the types of decisions courts have found to be academic. *See, e.g.*, *Horowitz,* 435 U.S. at 89–90 (holding that dismissal was academic when it "rested on the academic judgment of school officials" because "[s]uch a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision"). Based on the complaint and referenced documents, Gilani's failure to meet expectations in the summer course, and

---

[10] Gilani relies on *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926 (Tex. 1995), but as a Texas Supreme Court case interpreting state constitutional law, *Than* is not controlling authority here.

[11] A district court may properly consider documents that are not attached to the complaint, but that are referenced within it and attached to a defendant's Rule 12(b)(6) motion. *See Inclusive Cmtys. Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). Defendants' motion to dismiss cites to an appendix supporting its previous motion for judgment on pleadings. Defs.' Mot. Dismiss 4.

subsequent failure of the GI Course, led to his dismissal. The Court concludes that these reasons constitute an academic dismissal.

### 2. Gilani Has Failed to Show Defendants' Violated His Procedural Due Process Rights.

– As discussed in Section VI.A, *supra*, the due process requirements for an academic dismissal are notice and a meaningful opportunity to respond. *Davis*, 882 F.2d at 975. Here, Gilani received notice and an opportunity to respond to each of UT Southwestern's decisions. He had an opportunity to appeal the issuance of an academic warning, his dismissal after failing the GI Course, and his dismissal after failing the remedial GI Course. First Am. Compl. ¶ 23, 26–27; Defs.' App 1–8. Indeed, he successfully appealed his first dismissal from UT Southwestern, which enabled him to take the GI Course again. First Am. Compl. ¶ 27. Further, Gilani's dismissal was the result of a deliberate, multi-year process in which UT Southwestern provided notice of the consequences of future academic issues. Defs.' App 1–8. The complaint and referenced documents thus do not support a plausible inference that Gilani was denied procedural due process before his dismissal from UT Southwestern.

Because Gilani has failed to state a procedural due process violation, the Individual Defendants are entitled to dismissal in their official capacities and qualified immunity[12] in their personal capacities. Accordingly, the Court grants Defendants' motion to dismiss Gilani's procedural due process claim.

---

[12] Because Gilani has not sufficiently alleged that Defendants violated his procedural due process right, the Court need not assess whether the right was clearly established. *See Saucier*, 533 U.S. at 201.

MEMORANDUM OPINION AND ORDER – PAGE 13

### *B. Gilani Has Failed to State a Substantive Due Process Claim*

As discussed in Section VI n.8, *supra*, the Supreme Court has never recognized a substantive due process right to continued higher education at a public university. *Shah*, 129 F. Supp. 3d at 497. The Court will thus follow the approach of the Supreme Court and Fifth Circuit of assuming, without deciding, that such a right exists.

"An academic dismissal only amounts to a substantive due process violation if it is 'clearly arbitrary or capricious.'" *Doe v. Harwell*, 841 F. App'x 663, 670 (5th Cir. 2021) (unpub.) (citing *Horowitz*, 435 U.S. at 91). Therefore, a plaintiff must plausibly allege that the defendant's conduct is "beyond the pale of reasonable academic decision-making" and "such a substantial departure from accepted academic norms as to demonstrate that the [officials] responsible did not actually exercise professional judgment." *Doe*, 841 F. App'x at 670.

In this case, Gilani alleges that the Individual Defendants violated his substantive due process rights by engineering his failure of the GI Course. He claims that Defendants excluded him from a two-point curve and that he would have passed with the additional points. First Am. Compl. ¶ 24. He also alleges that Arlene Schahs, Director of Student Academic Services, confirmed the existence of the curve and "forbid [him] from ever mentioning the abuse of the curve and informed him he would receive a professionalism disciplinary form if he disregarded her order." *Id.* ¶ 25. Finally, Gilani alleges that after he took the remediation exam, Defendants strayed from the "usual course of conduct" by not providing a preliminary score and instead informing him that the "remedial exam had been hand-graded and that he had failed." *Id.* ¶ 25.

MEMORANDUM OPINION AND ORDER – PAGE 14

The Court concludes that, even taking these allegations as true, they do not meet the high standard required for a substantive due process violation. Courts must assess academic decision-making against the background of a student's entire career at a university. *Shah*, 129 F. Supp. 3d at 504; *see also Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 228 (1985). While excluding a student from a standardized curve may be frowned upon, given Gilani's academic record,[13] it is not so beyond the pale of academic reasoning to think that no professional judgment was involved. After all, the Supreme Court has permitted schools to exclude students with troubled academic backgrounds from opportunities afforded to others. *See Ewing*, 474 U.S. at 216, 227–28 (finding that a university's decision to allow other students, but not plaintiff, to retake an exam did not constitute a substantive due process violation). Likewise, deviating from standard internal procedures and hand grading an exam is not so far outside of accepted academic norms as to constitute a due process violation.

The Court acknowledges that the allegations are concerning. However, Supreme Court precedent requires courts to "show great respect for faculty's professional judgement" and significantly limit any review of academic decisions, *Ewing*, 474 U.S. at 225, and this Court has found no Fifth Circuit case upholding a substantive due process claim regarding an academic dismissal. Accordingly, the Court holds that Gilani has failed to allege a plausible substantive due process violation.

---

[13] Gilani argues that he did not have a poor academic record because his failure of the summer elective was based on a false accusation that he misrepresented his travel. Pl.'s Suppl. Br. [31] 7–8. However, as discussed in Section VI.A.1., UT Southwestern provided reasons for his failure apart from his travel time.

Because Gilani has not stated a substantive due process violation, the Individual Defendants are entitled to dismissal in their official capacities and qualified immunity[14] in their personal capacities. The Court thus grants Defendants' motion to dismiss Gilani's substantive due process claim.

## VII. TITLE VI CLAIM

Gilani has stated a plausible claim for discrimination under Title VI of the Civil Rights Act. Title VI states, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Thus, to prevail on his Title VI claim, Gilani must show that (1) Defendants engaged in intentional discrimination based on race, and (2) UT Southwestern received Federal financial assistance. *Alexander v. Sandoval*, 532 U.S. 275, 275–76 (2001). UT Southwestern contends only that Gilani has failed to plausibly allege intentional discrimination. The Court disagrees.

A Title VI complaint must include "specific allegations of acts that were taken with discriminatory intent." *Mohamed ex rel. A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 627 (N.D. Tex. 2017). "Discriminatory intent may be proven (among other ways) by departures from procedural norms, a history of discrimination against others similarly situated, or by circumstantial evidence, such as a pattern of conduct on inexplicable on

---

[14] Because Gilani has not sufficiently alleged that Defendants violated his substantive due process right, the Court need not assess whether the right was clearly established. *See Saucier*, 533 U.S. at 201.

MEMORANDUM OPINION AND ORDER – PAGE 16

grounds other than race." *DuVall v. Att'y Gen. of Tex.*, 2008 WL 11453691, at *3 (W. D. Tex. 2008), *aff'd sub nom. DuVall v. Att'y Gen. Off. of Tex.*, 325 F. App'x 329 (5th Cir. 2009). When a plaintiff provides circumstantial evidence of intentional discrimination, courts apply the *McDonnell Douglas* burden shifting framework. *See Daniel v. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 2022 WL 1055578, at **4–5 (5th Cir. 2022) (unpub.) (applying the *McDonnell Douglas* framework in a Title VI case). At the motion to dismiss stage, however, courts look to the framework as only a "helpful reference" in determining whether the plaintiff has plausibly alleged intentional discrimination. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). Indeed, a court would "inappropriately heighten[] the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Id.*

In this case, Gilani has plausibly alleged that Defendants' actions leading up to his dismissal stemmed from intentional discrimination. First, as discussed in Section VI.B, *supra*, Gilani alleges several deviations from academic norms such as exclusion from a standardized curve. *See* First Am. Compl. ¶¶ 24, 28. Second, Gilani names two UT Southwestern faculty members who told him the university "treated him as it did . . . because of his race." *Id.* ¶ 42. Finally, Gilani alleges UT Southwestern treated similarly situated students of different races more favorably. He cites two White and Hispanic students who traveled during a summer research class and "performed substantially less work," yet faced no scrutiny regarding their work or travel. *Id.* ¶ 45. Gilani also lists an Asian-American student who, like him, failed the GI Course twice but

MEMORANDUM OPINION AND ORDER – PAGE 17

was permitted to continue his studies. *Id.* ¶ 47. Further he alleges that a White student who had "a less-than-exemplary performance on her first five (5) exams" at UT Southwestern and failed a national medical licensing exam did not face dismissal. *Id.* ¶ 48. Taking these allegations as true, the Court concludes that Gilani has alleged sufficient facts to "nudge [his] claim across the line from conceivable to plausible." *Cicalese*, 924 F.3d at 768 (cleaned up) (quoting *Twombly*, 550 U.S. at 547).

Further, the Court declines to consider Defendants' arguments that each comparator is not sufficiently similar. An analysis of whether comparators are actually "similarly situated" is best suited for the summary judgment phase. *Cicalese*, 924 F.3d at 768. On the face of the complaint, it is plausible to infer that UT Southwestern treated Gilani differently than his non-African-American classmates. Accordingly, the Court denies Defendants' motion to dismiss Gilani's Title VI claim.

## CONCLUSION

Because the complaint's allegations are sufficient to support only Gilani's Title VI claim, the Court grants in part and denies in part Defendants' motion to dismiss. The Court thus dismisses Gilani's procedural and substantive due process claims with prejudice.

Signed March 13, 2023.

David C. Godbey
Chief United States District Judge