IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AL GILANI, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 3:21-CV-1461-N | |
| § | | |
| UNIVERSITY OF TEXAS § | | |
| SOUTHWESTERN MEDICAL § | | |
| CENTER, § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant University of Texas Southwestern Medical Center's ("UTSW") motion for summary judgment [62]. Because Plaintiff Al Gilani has failed to make a prima facie case of discrimination, the Court grants summary judgment and dismisses all claims.

### I. ORIGINS OF THE MOTION

This is a case about race discrimination under Title VI. Def.'s Mot. at 5. Gilani is a black student who was dismissed from UTSW medical school following a series of failed courses and academic probations. *Id.* Gilani failed five courses his first semester of medical school. Burns Decl., Def.'s Appx. at 8 [62-1]. The UTSW Student Promotions Committee ("SPC"), a body of UTSW faculty members with voting power to determine dismissal, academic warning, academic probation, or other conditions of continued enrollment for students with academic deficiencies, reviewed Gilani's record and made a

MEMORANDUM OPINION & ORDER – PAGE 1

determination to allow him to repeat his first semester on academic probation. *Id.*[1] The SPC consists of 28–30 voting members as well as 5–7 non-voting ("ex officio") members. *Id.*

After concerns arose surrounding Gilani's summer elective research trip and Gilani received a failing grade, the SPC again considered his record and placed him on academic warning for the remainder of his enrollment. *Id.* at 9.[2] He then failed his gastrointestinal

---

[1] Gilani alleges that the SPC never met and his disciplinary actions were engineered by a single non-voting member of the committee, Dr. Mihalic, who he alleges fabricated fictional meetings and "authored" the letters sent by the committee chair, Dr. Burns. Pl.'s Am. Compl. ¶¶ 23, 26, 27, 30, 31 [15]. Despite Gilani's assertion that the defendant has "refused to prove any of these meetings have ever taken place," Pl.'s Resp. Br. 4 [68], UTSW has produced both sworn testimony from Dr. Burns that the meetings took place, Burns Decl., Def.'s Appx. at 8–9, and the official letters regarding the decisions made in these meetings that were sent to Gilani. *Id.* at 10–18. Because the only evidence on the record supports that these meetings took place, the Court finds there is no genuine issue of fact as to the actuality of the meetings and the decisions made in them.

[2] Gilani believes that he should not have received a failing grade for this course. Pl.'s Resp. Br. 9. UTSW has produced evidence to show that Gilani was given a failing grade after an investigative report by the Office of Global Health determined that (1) Gilani and his research partner spent only two weeks at the approved research site out of the eight weeks required by the elective, (2) he submitted his research on a different topic than his approved proposal, (3) he turned in his work after the deadline, and (4) he violated UTSW policy by holding himself out as a representative of the school in unapproved visits with administrators at hospitals in various countries with the stated intention to "establish partnerships" for the school without UTSW's knowledge or authorization. Def.'s Appx. 41–43, 175. Gilani does not appear to directly dispute any of the stated reasons, which are supported by evidence produced on the record, *see* Def.'s Mot. at 7–8 (listing evidence), nor that he was given a failing grade. Rather, he argues that the failing grade was unfair because his UTSW mentor knew of his travels and "expressed no reservations about those travels or with the quality of Mr. Gilani's work in Uganda" and because he believes students on another trip "did substantially less work" than he did. Pl.'s Am. Compl. ¶¶ 19, 45. Because the Court finds that the evidence supports a number of independently sufficient reasons for his failure, his argument does not raise a fact issue regarding whether UTSW wrongfully gave him a failing grade.

MEMORANDUM OPINION & ORDER – PAGE 2

systems ("GI") course. *Id.*<sup>3</sup> The SPC again considered Gilani's academic performance as a whole and dismissed Gilani from UTSW medical school. *Id.* Gilani successfully appealed this decision based on his acceptance of responsibility for his deficiencies in these courses and contingent upon the successful remediation of the GI course. *Id.* at 9, 14. Gilani failed to complete the requirements of the remediation course and failed the remediation exam. *Id.* at 9, 16. The SPC once more evaluated his academic performance and dismissed him. *Id.* at 9.

Gilani again appealed. *Id.* The Dean of UTSW Medical School designated Dr. Thiele, a professor uninvolved with Gilani's coursework and dismissal, to review Gilani's appeal. Lee Decl., Def.'s Appx. at 1. Dr. Thiele personally re-checked Gilani's exam answers for both the original GI exam and the remediation exam and confirmed that the exams had received accurate grades. Thiele Decl., Def.'s Appx. at 4. He determined that there were no irregularities in the administration or grading of Gilani's exams. *Id.* The Dean then reviewed Dr. Thiele's review and recommendation and upheld the SPC's

---

<sup>3</sup> Gilani alleges that he was omitted from a curve that would have put him above passing in this class. Pl.'s Am. Compl. ¶¶ 24–25, 73; Pl.'s Resp. Br. 12–13. In his Response, Gilani claims that a faculty member "confirmed that this curve on this exam happened, and that he was excluded from it," and further alleges that UTSW presented "no evidence in the Motion that she would not testify to that or that she is incorrect." Pl.'s Resp. Br. 13. However, Gilani fails to point to any evidence on the record to support this assertion and cites only to his own pleading. Defendant has offered evidence to rebut this assertion in the form of a declaration by the course instructor, who "confirmed that Gilani did in fact receive the same two-point grade increase that all the other students in the GI course received that semester." DeMartino Decl., Def.'s Appx. at 37. Because the unrebutted evidence on the record shows that Gilani was not excluded from the curve, the Court finds that no genuine fact issue has been raised regarding whether UTSW gave him this grade wrongfully.

MEMORANDUM OPINION & ORDER – PAGE 3

decision to dismiss Gilani. Lee Decl., Def.'s Appx. at 1; Dismissal Letter, Def.'s Appx. at 3.

Gilani then filed this lawsuit, alleging that his dismissal was racially motivated in violation of Title VI. He alleges that Dr. Mihalic — the Dean of Medical Students, Associate Dean of Student Affairs, and a non-voting member of the SPC — engineered and directed his academic deficiencies and SPC's decisions. Gilani Dep., Def.'s Appx. at 201–02 ("I believe some of the individuals on the SPC . . . get in line and get in formation per all — any and all of Dr. Mihalic's directives."). He further alleges that Dr. Mihalic "has a track record" of discrimination and once made a comment in Gilani's presence at a meeting over his continued education following one of his academic deficiencies that "it's problematic with these kinds," which he took to be referencing his race. *Id.* at 196–97.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, that party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant

MEMORANDUM OPINION & ORDER – PAGE 4

judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. GILANI FAILS TO MAKE A PRIMA FACIE CASE

Gilani alleges that UTSW dismissed him based on his race in violation of Title VI, which prohibits any person to "be excluded from participation, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance" "on the ground of race, color, or national origin." 42 U.S.C. § 2000d. To prevail on a Title VI claim, Gilani must show that UTSW engaged in intentional discrimination based on race. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). When a plaintiff provides circumstantial evidence of intentional discrimination, courts apply the

*McDonnell Douglas* burden shifting framework. *See Lan v. Univ. Tex. San Antonio*, 2025 WL 233653, at *2 n.7 (5th Cir. 2025) (per curiam) (unpub.) (affirming the district court's application of *McDonnell Douglas* in the Title VI context).

### A. Legal Standard under the McDonnell Douglas Framework

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Gilani bears the initial burden of establishing a prima facie case of discrimination. Once accomplished, the burden to produce — but not persuade — shifts to UTSW, which must provide a nondiscriminatory, nonretaliatory explanation for its actions. The burden then shifts back to Gilani to raise a fact issue regarding whether UTSW's stated reasons for dismissal are pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993) and *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

### B. Gilani Fails to Make a Prima Facie Case of Discrimination.

First, Gilani must establish a prima facie case of discrimination. A plaintiff must establish four elements for a prima facie case under the *McDonnell Douglas* framework, absent direct evidence of intentional race discrimination: (1) he is a member of a protected group; (2) his performance met the university's legitimate expectations; (3) he suffered an adverse action; and (4) he was treated less favorably than similarly situated students of a different race or was otherwise dismissed based on his race. *Bisong v. Univ. of Hous.*, 493 F. Supp. 2d 896, 906 (S.D. Tex. 2007) (citing *McDonnell Douglas*, 411 U.S. at 792 and *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)); *see*

*also Lan*, 2025 WL 233653, at *2 n.7 (discussing *McDonnell Douglas* elements in the Title VI context).

Gilani is a member of a protected group based on his race. His dismissal satisfies the third element as an adverse action.[4] Therefore, the Court turns first to the second element, whether his performance met the university's legitimate expectations, and then to the final element, whether he was treated less favorably than similarly situated students of a different race or was otherwise dismissed based on his race.

As an initial matter, Gilani puts no evidence on the record to support any of his assertions. In fact, Gilani's response is devoid of any citations to evidentiary support. He cites only to his own pleadings and fails to include an appendix of any substance[5] through which the Court might search for evidence were it so inclined. *See* Local Rule 56.6(a). When a summary judgment motion is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing there is a genuine issue for trial." FED. R. CIV. P. 56(e). The Court has before it only the evidence provided by UTSW in the appendix to its motion for summary judgment.

---

[4]  As discussed above, Gilani has not presented any evidence that any of his failing grades were unwarranted. Therefore, to the extent that Gilani makes the argument that any failing grades were themselves adverse actions, the Court finds that they are not.

[5]  Gilani does include an appendix, but the contents are inapplicable to the evidentiary standard of a motion for summary judgment. The appendix includes a spreadsheet listing the plaintiff's disclosures, a list of the defendant's initial disclosures, objections and responses to requests for production, and defendant's privilege log. *See generally* Pl.'s Appx. [67-1].

MEMORANDUM OPINION & ORDER – PAGE 7

First, the Court finds that Gilani has failed to establish the second element, that his performance met the university's legitimate expectations of his academic performance as a medical student. The evidence shows that Gilani failed seven courses and a remediation exam while enrolled at UTSW. He was placed on academic probation and warning on three occasions, and he failed to successfully remediate the GI course, which was a condition of his reinstatement and academic probation. This evidence establishes Gilani's consistent failure to meet the university's legitimate expectations during his time as a medical student. Furthermore, despite Gilani's claim that he should not have failed either the summer research elective or the GI course "on the merits," there is no evidence on the record to support this claim.[6] Therefore, because there is no evidence to support his assertion that he should not have failed, and because the Court follows the Supreme Court's guidance to "show great respect for the faculty's professional judgment" in academic decisions without a showing of "substantial departure from accepted academic norms," *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985), the Court finds that Gilani has made no showing that he should not have failed these courses. Gilani's repeated failure to meet the academic standards to pass his classes clearly demonstrates that his performance did not meet the university's legitimate expectations.

The Court next turns to the fourth element. Gilani fails to show that he was treated less favorably than other students. Gilani pleads three sets of comparators. First, he alleges

---

[6] UTSW has submitted summary judgment evidence to demonstrate the reasons for which Gilani was given a failing grade on the summer research elective and to rebut Gilani's theories of procedural discrepancies in his GI exam grading. *See supra* nn.2–3. Gilani does not offer any summary judgment evidence to raise a fact issue with UTSW's evidence.

MEMORANDUM OPINION & ORDER – PAGE 8

that two white students on a different summer elective trip "performed substantially less work" on their course than he did on his and "travelled away from [the site of their research] far more" than he did, and they were not given a failing grade or dismissed. *Id.* at ¶ 45. Next, he alleges that a white student, Flowers, was not dismissed after she failed her first five classes and a national medical licensing exam. Pl.'s Am. Compl. ¶ 48. Finally, he alleges that one Asian-American classmate, Nguyen, failed the GI course and the remedial exam, as Gilani did, and he was not dismissed. *Id.* at ¶ 47.

In Gilani's deposition, provided in part in Defendant's appendix, he admitted that he was unaware of the circumstances of the other students. He did not know how long the students spent at their research site, nor was he aware of what research they prepared and submitted following their trip. *Id.* at 193–94. He did not know whether Flowers had any previous concerns in front of the SPC or was on academic probation when she failed, nor could he identify any circumstance in which UTSW had dismissed a student after failing the national exam. Gilani Dep., Def.'s Appx. at 190–92. Finally, he was unsure of what grade Nguyen received on his remediation exam and did not know whether Nguyen had any previous academic deficiencies before failing the GI course and remediation that would have placed him on academic probation or warning prior to failing the course. *Id.* at 194.

Because Gilani does not allege facts to show that the students on the other summer elective trip did not complete the requirements of their course, the Court finds that this is a false comparison. His belief that they did not work as hard as him or that they traveled more does not, without more, demonstrate similar circumstances. Likewise, his comparison to Flowers and Nguyen does not demonstrate disparate treatment. At the most

MEMORANDUM OPINION & ORDER – PAGE 9

basic level, Gilani's academic performance was raised as an issue in front of the SPC four times, and he was placed on academic probation or warning three times: (1) when he failed his first semester and was placed on academic probation, (2) when issues arose with his summer elective course and he was placed on academic warning, (3) when he failed his GI course and was initially dismissed but then reinstated and placed on academic probation, and finally (4) when he failed the condition of his academic probation by failing his remediation course and exam. He only alleges Flowers and Nguyen had two academic performance issues that each mirrored one of his four incidents. Similar to both of them, UTSW did not dismiss him after his first or second academic deficiency, so neither establishes a comparator because he does not allege a similar series of academic deficiencies and decisions.

      Finally, Gilani fails to raise a fact issue regarding whether he was dismissed based on his race. Gilani claims throughout his complaint that a single individual, Dr. Mihalic, orchestrated every alleged mistreatment he faced at UTSW. *See, e.g.*, Pl.'s Am. Compl. at ¶ 21 (attributing the investigation into his summer research elective deficiencies to Dr. Mihalic); ¶¶ 23, 26, 27, 30, 31 (alleging that Dr. Mihalic fictionalized multiple SPC meetings and unilaterally sent him letters to place him on academic warning and probation without the knowledge or consent of the committee); ¶ 28 (believing Dr. Mihalic altered the grading procedure for his GI exam in order to fail him); ¶ 73 (arguing that the alleged failure to apply the 2-point curve in the GI course to Gilani was engineered by Dr. Mihalic); Gilani Dep., Def.'s Appx. at 201 (asserting that he believes the SPC members "get in line" with any of Dr. Mihalic's directives and would presumably vote in a way that she directed).

MEMORANDUM OPINION & ORDER – PAGE 10

This is significant because Dr. Mihalic is the only individual at UTSW that Gilani alleges had discriminatory animus toward him. Gilani's contention of racial discrimination does not extend beyond the alleged influence of Dr. Mihalic. He stated in his deposition that he did not believe anyone on the SPC other than Dr. Mihalic had racial motivations. Gilani Dep., Def.'s Appx. at 201–02. He did not hear any other language that he considered racially derogatory from Dr. Burns, Dr. Thiele, or Dr. Lee. *Id.* at 198. He alleges that Dr. Mihalic "has a track record" of racial discrimination, which he asserts is demonstrated by a single incident where he overheard her tell another administrator "it's problematic with these kinds" in reference to him after a meeting following one of the SPC decisions on his academic future. *Id.* at 196–97. The Court need not determine whether such an ambiguous remark is sufficient to show discriminatory animus, because Gilani fails to demonstrate actual connection between Dr. Mihalic and the dismissal decision.

Dr. Mihalic is an ex-officio member of the SPC and "did not vote on any matters pertaining to Gilani." Burns Decl., Def.'s Appx. at 9. Despite Gilani's unsupported contention that the SPC meetings did not happen, UTSW has produced summary judgment evidence to rebut that claim, *see* Def.'s Appx. 9–18, and Gilani has failed to offer any contrary evidence. The record supports that there was no procedural irregularity in the administration or grading of his GI exam or remediation exam. Thiele Decl., Def.'s Appx. at 4 (confirming that Dr. Thiele independently reviewed and regraded Gilani's exams and "determined that [there] were no procedural irregularities in the administration or grading of Gilani's original final exam or his remediation exam for the GI course"). Likewise, UTSW has offered summary judgment evidence to rebut the unsupported assertion that

MEMORANDUM OPINION & ORDER – PAGE 11

Gilani was left out of the GI curve. Demartino Decl., Def.'s Appx. at 37 (Gilani's GI course professor confirmed that "Gilani did in fact receive the same two-point grade increase that all the other students in the GI course received that semester").

Finally, the bare assertion that three dozen voting members of the SPC, with ample demonstrated reason to dismiss a student who failed time and again to meet the university's legitimate expectations, and who Gilani does not contend have any independent discriminatory animus toward him, were somehow influenced by an ex-officio member to recommend his dismissal strains credulity.[7] Gilani offers no evidence to support any assertion that Dr. Mihalic would have been in a position to assert any influence over the SPC or in what manner she would have done so, which Gilani appears to acknowledge in his deposition. Gilani Dep., Def.'s Appx. at 199 ("Q: Do you believe that she directed the votes of the other members of the SPC? A: I don't know. I wasn't there."). It appears that the extent of this allegation is that he doesn't believe that his "side of the story was ever presented" to the committee prior to his last appeal meeting, when he was granted an opportunity to address them. *Id.*

---

[7] The Fifth Circuit has been wary of allowing such a strained cat's paw argument. *See Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 203 (5th Cir. 2007) (per curiam) (unpub.) (finding that the mere evidence that someone on a six-person board may have harbored discriminatory animus did not demonstrate influence without evidence of that person being entitled "to a greater voice in the proceedings" or some other show of influence); *see also Roque v. Natchitoches Parish Sch. Bd.*, 583 F. App'x 466, 470 (5th Cir. 2014) (per curiam) (unpub.) (Jolly, J., concurring) ("Although I leave open the possibility that the cat's paw theory could apply in some cases where one member of a board has clear leverage or influence over the others, I would argue that we should be reticent to draw such an inference.").

MEMORANDUM OPINION & ORDER – PAGE 12

Furthermore, the dismissal decision was subject to an independent review of Gilani's file by Dr. Thiele, a report and recommendation by Dr. Thiele presented to the Dean, and acceptance by Dean Lee. Lee Dep., Def.'s Appx. at 1 ("After the [SPC] decided to dismiss [Gilani], I designated Dr. Dwain L. Thiele to review Gilani's appeal. . . . [A]fter careful consideration, I . . . decided to accept Dr. Thiele's recommendation and uphold the SPC's decision dismissing Gilani."). Gilani has not alleged that Dr. Mihalic had influence over either Dean Lee or Dr. Thiele.

Every link Gilani has alleged between Dr. Mihalic's alleged discriminatory animus and Gilani's dismissal has been rebutted by UTSW's evidence. All the evidence on the record, taken in the light most favorable to Gilani, shows that Dr. Mihalic did not orchestrate any adverse events against him and discriminatory animus was not a factor in his dismissal. Gilani has failed to raise a fact issue to show he was dismissed or adversely treated because of his race.

Gilani has not presented a fact issue either that (1) his performance met the university's legitimate expectations, (2) that he was treated less favorably than any other students, or (3) he was otherwise dismissed because of his race. Therefore, he is unable to show two of the elements necessary to establish a prima facie case. Because Gilani has failed to establish a prima facie case, the Court need not discuss the other steps under the *McDonnell Douglas* framework.

## CONCLUSION

Because Gilani has failed to meet his burden to establish a prima facie case for discrimination, the Court grants summary judgment to UTSW. Gilani has not requested leave to amend; therefore, the Court dismisses this case with prejudice.

Signed February 24, 2025.

_____
David C. Godbey
Chief United States District Judge